United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA MACIAS, | No. C 10-04152 SI |
| Plaintiff, | **ORDER DENYING EXCEL'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| EXCEL BUILDING SERVICES LLC, | |
| Defendant. | |

Excel's motion to compel arbitration is currently scheduled for hearing on February 11, 2011. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby DENIES Excel's motion. **The Case Management Conference set for February 11, 2011 at 2:30 p.m. remains on calendar.**

**BACKGROUND**

Susana Macias ("Macias") began working for Excel Building Services ("Excel") in approximately December 2004. Comp. ¶ 14, Doc. 1. She was initially employed as a janitor and later promoted to janitorial supervisor. *Id.* at ¶ 18. After her promotion, Macias alleges that she still performed basic janitorial duties in addition to her supervisory duties. *Id.* Macias claims that she was often expected to work overtime but was not paid any extra wages. *Id.* at ¶ 17.

In approximately May 2009, Macias became pregnant. *Id.* at ¶ 25. She was hospitalized due to pregnancy-related health issues in August 2009. *Id.* at ¶ 26. When Macias was released from the hospital, the doctors recommended that she take a three-week break from work, minimize heavy lifting

and take more frequent breaks. *Id.* at ¶¶ 26-27. Macias alleges that Mr. Ramos, her supervisor at Excel, was unwilling to grant her the requested leave or adjust her work load. *Id.* During Macias' final trimester, she alleges that she once again asked that her assignments be modified to accommodate her pregnancy (*e.g.* that she not be required to do heavy lifting, or work with harsh chemicals) and that she was once again denied, this time by Feliza Guerrero, Excel's Human Resources Manager. *Id.* at ¶ 29.

Macias claims that on December 29, 2009, she met with Guerrero to request maternity and bonding leave. *Id.* at ¶ 33. She alleges that the two created a written agreement indicating that Macias would be on full-time leave between January 31, 2010 and March 15, 2010, then work part-time between March 15, 2010 and May 1, 2010, and resume full-time work on May 2, 2010. *Id.* Macias began her maternity leave as scheduled, on January 31, 2010, and gave birth on February 9, 2010. *Id.* at ¶ 34. Macias alleges that on March 12, 2010, she contacted Guerrero to confirm that she would return to work part-time on March 15. *Id.* at ¶ 35. Macias claims that she was told that she would have to meet with Jack Fabrique, the head of the company, in Pleasanton before returning to work. *Id.* Macias alleges that the meeting was repeatedly rescheduled and did not take place until March 31, 2010. *Id.* at ¶¶ 36-37. At that meeting, Macias claims that Fabrique terminated her employment, stating something to the effect of "women do not work as well after having a baby." *Id.* at ¶¶ 38-39. Macias, who claims to speak only Spanish, alleges that Guerrero acted as her translator at this meeting. *Id.* at ¶ 37. Macias alleges that after she was terminated, Fabrique and Guerrero offered her papers written in English and told her that if she would sign the papers, which included a waiver of Macias right to sue Excel, she would be given $2,000. *Id.* at ¶ 40. Macias states that she requested a copy of the papers so that she could have someone help her read them before deciding but was refused. *Id.* Macias declined to sign the papers. *Id.*

On September 16, 2010, Macias filed suit against Excel, requesting a jury trial and claiming that Excel had violated Title VII, the California Fair Employment and Housing Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the California Labor Code, and the California Business and Professions Code. *Id.* at ¶ 44. On November 15, 2010, Excel responded by filing a motion to compel arbitration, or in the alternative, to stay proceedings pending arbitration. Def. Excel Bldg. Services, LLC's Notice of Mot. and Mot. to Compel Arb. and Dismiss Compl. or, in the Alternative, to Stay

2

Action Pending Arb. ("Mot. to Compel"), Doc. 6. Excel alleges that the company and Macias entered into a binding Arbitration Agreement ("Agreement") that governs any and all disputes arising from Macias' employment with and termination from Excel. *Id.* at 1.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-478 (9th Cir. 1991), cert denied, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or inequity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. *See id; see*

3

*also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Accordingly, the Court reviews plaintiff's arbitration agreement in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, and considers the enforceability according to the laws of the state of contract formation, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

The Ninth Circuit and the California Supreme Court have both declined to enforce arbitration agreements where the agreement was found to be unconscionable. *See e.g. Ingle*, 328 F.3d 1165*; Armendariz v. Found Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 91 (2000). Under California law, in order for a court to find an arbitration agreement unconscionable as a whole, the court must find that the agreement is both procedurally and substantively unconscionable. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (citing *Armendariz*, 24 Cal. 4th 83). The more procedurally unconscionable an agreement is, the less substantive unconscionability is necessary to invalidate the agreement, and vice versa; however, both must be present at some level. *Id.* (citing *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997)).

**DISCUSSION**

In determining whether the Excel Agreement is enforceable, this Court must first determine whether the Agreement is procedurally unconscionable. If it is, this Court must determine whether it is also substantively unconscionable. If both criteria are met, the Court must then determine whether the entire agreement must be invalidated, or whether certain terms may be removed while leaving the remainder intact.

While the Court may not review the merits of the underlying case "[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Ostroff v. Alterra Healthcare Corp.,* 433 F. Supp. 2d 538, 540 (E.D. Pa., 2006).

**I.     The Agreement Is Procedurally Unconscionable**

The procedural aspect of the unconscionability analysis focuses on the manner in which the

4

agreement was negotiated, and, typically, on the oppressiveness of the stronger party's conduct. *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 114 (2004). "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Id.* (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). "An arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." *Id.* (citing *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 690–91 (2000)).[1]

Macias argues that the arbitration agreement is procedurally unconscionable because it is an essential part of a take it or leave it employment contract: "[a]s an employee of Excel, she had no choice but to sign the agreement if she wished to continue her employment with Excel." Pl. Opp. at 4. Excel counters by arguing that Macias failed to demonstrate that Excel would have been unwilling to consider someone for employment if that person attempted to negotiate or opt out of the arbitration agreement.

In a declaration, Macias says that she was told that she "needed" to sign certain papers in 2007, two years after she was hired by Excel, and again in 2009. Macias Decl. at ¶¶ 2–3, 5. Macias also submits a copy of the "Excel Building Services Employee Handbook." Shawver Decl. Ex. A. The second page of the handbook states that any "revisions, deletions or additions" to the handbook "must be in writing and must be signed by the Chief Executive Officer of the Company." *Id.* at 2. The last two pages of the handbook are an "Acknowledgment and Agreement" to be signed by the employee, fully half of which is an agreement to arbitrate. *Id.* at 39–40. It is this agreement to arbitrate that is at issue in this motion, and it is the only part of the handbook that must be signed by the employee.[2]

---

[1] While neither the California Supreme Court nor the Ninth Circuit has held that arbitration agreements included in employment contracts of adhesion are inherently unenforceable, each court has repeatedly declined to enforce such provisions. Most of the cases cited by Excel, in fact, involve employment contracts that were held to be unenforceable. For example, in *Stirlen v. Supercuts Inc.*, 51 Cal. App. 4th 1519, 1534 (1997), a California appellate court held that an employment contract that Supercuts required its executives to sign was a contract of adhesion and thus procedurally unconscionable; and in *McManus v. CIBC World Mkt. Corp.*, 109 Cal. App. 4th 76, 102 (2003), where a California appellate court did compel arbitration, it first held that the agreement was procedurally unconscionable and that at least one of the provisions was substantively unconscionable and thus had to be severed before arbitration could proceed.

[2] Along with its motion, Excel submitted a piece of paper that says it contains an arbitration provision and appears to be signed by Macias and dated May 1, 2007. Guerrero Decl. Ex. A. Other than the signature, it is identical to page 40 of the handbook submitted by Macias. Excel also

1 Excel presents no affirmative evidence that Macias in fact *could* have attempted to negotiate the
2 terms of her employment. Macias worked initially as a janitor and later as a janitorial supervisor.
3 Macias Decl. ¶ 2. The unsubstantiated suggestion that she might have been permitted to negotiate the
4 terms of the Agreement is not persuasive. *See Davis*, 485 F.3d at 1073-74 (recognizing that while
5 employees working at an international law firm were "invited to ask questions" about the arbitration
6 agreement, that did not "indicate that the terms were negotiable for employees such as Davis."); *see also*
7 *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1285-86 (2004) (holding that even where
8 an employee is represented by counsel during contract negotiation, the contract may still be found
9 procedurally unconscionable where no opportunity for meaningful negotiation exists).

10 Excel argues that this does not matter because "the issue [of procedural unconscionability] boils
11 down to a question of whether [Macias] was somehow surprised, tricked, misled, or uninformed by
12 Excel in connection with executing the Agreement." Def.'s Reply to Opp. to Mot. to Compel ("Def.
13 Reply"), 2, Doc. 19. This is untrue. In *Davis*, the Ninth Circuit stated clearly that the arbitration
14 agreement it was examining contained "no factors of adhesion such as surprise or concealment. The
15 [agreement] was not hidden. The terms were not concealed in an employee handbook. The binding
16 nature of the agreement was in bold and uppercase text. Terms were not buried in fine print." 485 F.3d
17 at 1073. Nevertheless, the Ninth Circuit found the agreement to be unconscionable because it was a
18 "take it or leave it" contract of adhesion. *Id.* The fact that the employer gave its employees three
19 months to consider whether or not to sign did not save the agreement. *Id.* Employees were not able to
20 opt out while remaining employed, which required a finding of procedural unconscionability. *Id.*

21 The Court concludes that the arbitration agreement was an essential part of a "take it or leave
22 it" employment condition. The adhesive "take it or leave it" nature of Excel's Agreement, combined
23 with the significant disparity in bargaining power between Excel, as the employer, and Macias, as the

---

25 submitted a two-page, unsigned "Acknowledgment and Agreement" document, which is identical to
26 pages 39 and 40 of the handbook. *Id.* Plaintiff does not argue that she did not sign an arbitration agreement, and she does not argue that the agreement that she signed is different from the unsigned
27 agreement that Excel has submitted to the Court. She does say that she was told not to date the papers she signed in 2009. Macias Decl. ¶ 6. Therefore, for the purpose of deciding this motion, the Court
28 accepts that Macias signed an arbitration agreement in 2007 or in 2009 that is identical to the arbitration agreement presented by Excel.

employee, leads the Court to conclude that the agreement is procedurally unconscionable.

## II.     The Agreement Is Substantively Unconscionable

"[U]nder California law, a contract to arbitrate between an employer and an employee . . . raises a rebuttable presumption of substantive unconscionability." *Ingle*, 328 F.3d at 1174. The employer may rebut the presumption by showing that the agreement contains a "modicum of bilaterality"or that there is a reasonable justification for the agreement's one-sidedness, based on business realities. *Armendariz*, 24 Cal. 4th at 117-18, cited with approval in *Ingle*, 328 F.3d at 1174, fn. 10. Terms that grant one party the power to unilaterally change the terms of an arbitration agreement may contribute to substantive unconscionability because such terms undermine the voluntary nature of arbitration agreements. *Ingle*, 328 F.3d at 1179. Additionally, a lack of information regarding the proposed arbitral forum or applicable arbitral rules may also contribute to substantive unconscionability. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003).

### A.     Mutuality

A finding of one-sidedness may be premised on the actual effect of the terms, rather than a superficial reading, where it is clear that the terms would in practice benefit one party. *See Stirlen*, 51 Cal. App. 4th at 1540-41 ("The mandatory arbitration requirement can only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which are virtually certain to be filed against, not by Supercuts.").

In the present case, the arbitration agreement requires that any dispute "arising out of or related to the termination of [the employee's] employment or involving allegations of unlawful harassment or discrimination" be submitted to arbitration. Guerrero Decl., Ex. A. Excepted from this provision are suits "regarding unfair competition, trade secrets or confidentiality." *Id.* The Agreement also states that the required arbitration "is the exclusive remedy for both [the employee] and Excel." *Id.*

In *Ingle*, the Ninth Circuit stated that where, under the terms of the agreement, "the possibility that [the employer] would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally

7

reaps the benefits of arbitrating its employment disputes." 328 F.3d at 1174. The idea that Excel would bring suit against Macias related to Macias' termination outside the scope of unfair competition, trade secrets, or confidentiality is implausible: it is difficult to imagine a scenario in which Excel would bring a discrimination or harassment case against Macias. *Cf. Ingle*, 328 F.3d at 1173-74 (finding an employer's claim that the arbitration agreement subjected both employer and employee to the same terms was "disingenuous" based on the remote probability of the employer bringing a covered claim against an employee).[3]

The situation in the present case is not as severe as in *Ingle*, where the agreement explicitly limited the arbitration requirement to claims brought by associates; however, the practical effect of the Agreement is the same here as it was in *Ingle*. *See Ingle*, 328 F.3d at 1174 ("The only claims realistically affected by an arbitration agreement between an employer and an employee are those claims employees bring against their employers."); *see also Stirlen*, 51 Cal. App. 4th at 1540-41. While this lack of mutuality alone does not create inherent unconscionability, it does substantiate the presumption of unconscionability established by the employment context of the Agreement. *See Ingle*, 328 F.3d at 1174.

### B.     Reasonable Business Justifications

Excel attempts to rebut the presumption of unconscionability by arguing that "[t]he information Macias was privy to as an Excel manager and the highly competitive nature of the janitorial industry made Excel particularly vulnerable to unfair competition, trade secrets and confidentiality damages. As such, the exemption of these claims from the Agreement is justifiable[.]" Def. Reply at 5.

The same arguments were made, and dismissed, in *Stirlen*:

> [The defendant's] chief argument is that violation of the employer rights. . . pertaining to patent infringement, improper use of confidential information and competition, pose

---

[3] Excel has argued that Macias' wage and hour claims are encompassed by the Agreement. Because the Court finds the Agreement unenforceable, the Court need not decide this issue at present. Were the Court to agree with Excel that such claims would be included in the subject matter governed by the Agreement, however, such a finding would serve only to exacerbate the lack of mutuality by limiting another employee claim to arbitration while placing no additional limitation on employer claims. *See Davis*, 485 F.3d at 1084 (noting that a claim such as failure to pay overtime would be brought by an employee, not an employer).

8

> "an immediate threat to business operations" and therefore require immediate access to the courts, which alone can provide meaningful "emergency relief." According to [the defendant], "[s]imple business realities underscore a need for this type of immediate access to court-ordered relief which is simply not present in the context of the standard employment dispute."
> . . .
> The forms of emergency judicial relief [the defendant] asserts it must have are available to a party compelled to arbitrate a dispute. Code of Civil Procedure section 1281.8, subdivision (b), provides, as material, that "[a] party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.

*Stirlen*, 51 Cal. App. 4th at 1536-37. The arguments that were insufficient in *Stirlen* remain insufficient here. Excel has failed to provide any other business justification for the lack of mutuality present in the Agreement, and has therefore failed to rebut the presumption of unconscionability.

### C. Absolute Control Over the Terms of the Agreement

In addition to the lack of mutuality, the Agreement is plagued by two other related deficiencies. First, the Agreement reserves for Excel the right to modify, change or delete the terms in the Handbook "at any time without prior notice . . . provided such changes are in writing and approved by the President or Chief Executive Officer of EXCEL." Guerrero Decl., Ex. A. In the fifth paragraph of the Agreement, employees "agree to submit to final and binding arbitration, **pursuant to EXCEL's Alternative Dispute Resolution Policy**, any dispute between [the employee] and EXCEL . . . ." *Id.* (emphasis added). Excel's Alternative Dispute Resolution Policy ("ADRP")[4] is outlined in the Handbook. Shawver Decl., Ex. A at 8; *see also id.*, Ex. B at 1 (confirming that the sole information provided to employees regarding Excel's ADRP is the information in the Handbook). This appears to grant Excel the power to change at least some of the terms of the Agreement at any time without ever providing

---

[4] Excel's documents sometimes refer to the Alternative Dispute Resolution Policy, as in the Agreement, and sometimes to the Alternative Dispute Resolution Program, as in the Handbook. Based on the comments from Excel's lawyer indicating that the policy outlined in the Handbook is the policy referred to in the Agreement, this Court will treat the two as interchangeable and refer to the policy as, simply, the ADRP.

notice to its employees.[5] *See Ingle*, 328 F.3d at 1179 (holding that a provision that explicitly granted Circuit City the right "to modify or terminate any and all dispute resolution agreements with its employees unilaterally" was substantively unconscionable). Second, the Agreement contains almost no details about the arbitration process while at the same time implying that a formal ADRP exists.

In *Armendariz*, the California Supreme Court adopted the District of Columbia Circuit's analysis of the five minimum requirements for a lawful arbitration of civil rights claims in the context of a mandatory employment arbitration agreement. 24 Cal. 4th at 102-03 (citing *Cole v. Burns Intern. Security Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33-34 (1991)). The *Armendariz* court stated that a mandatory employment arbitration agreement is enforceable if it:

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

*Id.* at 102.

Here, the only information about the ADRP is contained in the Handbook, which (1) states that it was designed and implemented by Excel, (2) provides for a hearing before an arbitrator selected by both sides and (3) implies the existence of other rules and procedures. *See* Shawver Decl., Ex. A at 8.

Excel argues that a more complete explication of the proposed arbitral procedures is unnecessary because "any missing terms in arbitration clauses must be implied consistent with the holding of *Armendariz*." Def. Reply at 8. While Excel is correct in its assertion that the Court may imply missing terms based on state law, the problem here lies not only in missing terms but also in implied and unexplained terms. The language of the Handbook indicates the existence of an employee grievance-filing procedure as well as a more formalized ADRP. *See* Shawver Decl., Ex. A at 8. However, the details of any such programs are not given in the Handbook; nor are they, apparently, available elsewhere. *See* Shawver Decl., Ex. B at 1 ("The policy in the handbook *is* the program. There is no other document. The parties agree to chose [sic] an arbitrator. As far as the procedures fort [sic] the

---

[5] Although the Handbook includes a requirement that the changes be in writing, no provision is made for notifying employees, nor is a procedure for displaying the written changes mentioned.

10

arbitration, they are provided by state and/or federal law.").

While these issues by themselves would not be enough to render the Agreement unenforceable, when viewed in conjunction with the other substantive inadequacies of the Agreement, they provide further support for the Court's belief that the Agreement, as a whole, is unconscionable.

### III. The Unconscionable Terms Cannot Simply Be Severed

Once a court has determined that one or more terms in an arbitration agreement are both procedurally and substantively unconscionable, the court must determine whether that unconscionability permeates the entire agreement to such an extent as to preclude the severing of any unconscionable terms and thus the salvaging of the contract. *Armendariz*, 24 Cal. 4th at 122; *see also Ingle*, 328 F.3d at 1180.

The procedural unconscionability of the Excel Agreement is based first on the fact that it is part of an adhesive employment contract. This goes to the very nature of the Agreement and thus permeates the Agreement in its entirety. *See Ingle*, 38 F.3d at 1180. The substantive unconscionability is based in the lack of mutuality regarding the scope of claims addressed by the Agreement, Excel's unilateral right to alter the terms of the Handbook, and the unknown nature of Excel's ADRP. While the scope of the claims could theoretically be severed, as could the reference to the ADRP, doing so would require a literal gutting of the Agreement and subsequent rewriting. Courts are neither required nor permitted to rewrite unconscionable contracts. *See Davis*, 485 F.3d at 1084; *see also Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1075 (2003) ("Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms. Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute."). Severing the unconscionable terms is not a viable solution; therefore, this Court must find the Agreement as a whole unconscionable and thus unenforceable. Excel's motion to compel arbitration is therefore DENIED.

/ / /

/ / /

/ / /

11

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES Defendant Excel's Motion to Compel Arbitration. (Doc. 6.)

**IT IS SO ORDERED.**

Dated: February 7, 2011

SUSAN ILLSTON
United States District Judge